UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Court File No. 15-cr-5 (DWF/LIB)

            Plaintiff,

v.                                           **REPORT AND RECOMMENDATION**

Aleemu Malik Adkins,

            Defendant.

This matter comes before the undersigned United States Magistrate Judge upon Defendant Aleemu Malik Adkins's Motion to Dismiss Indictment, [Docket No. 23]; Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 16]; and Motion to Suppress Statements, [Docket No. 22]. The present motions have been referred to the undersigned United States Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a pretrial motions and evidentiary hearing on March 9, 2015, regarding Defendant's pretrial discovery motions[1] and Defendant's motions to dismiss and suppress.[2] For reasons articulated herein, the Court recommends **DENYING** Defendant's Motion to Dismiss Indictment, [Docket No. 23]; **DENYING** Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 16]; and **DENYING** Defendant's Motion to Suppress Statements, [Docket No. 22].

I.    **BACKGROUND**

On or about January 6, 2015, Defendant Aleemu Malik Adkins ("Defendant") was charged with one count of felon in possession of a firearm – armed career criminal, in violation

---

[1] The Court addressed Defendant's pretrial discovery motions by separate Order, [Docket No. 32].
[2] Defendant's counsel requested an opportunity to obtain a transcript of the testimony at the evidentiary hearing and to submit supplemental briefing on the motions to dismiss and suppress evidence. The supplemental briefing was completed on April 9, 2015.

of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (Indictment [Docket No. 10]).

## II.   DEFENDANT'S MOTION TO DISMISS INDICTMENT, [DOCKET NO. 23]

Defendant moves the Court for an order dismissing the Indictment. (Def.'s Mot. to Dismiss [Docket No. 23]). In support of dismissal, Defendant argues only generally (1) that the Indictment does not state that Defendant has been convicted of committing at least three violent felonies or serious drug offenses on different occasions prior to the events underlying the Indictment, and (2) that the Government presented the Grand Jury with misleading and/or incomplete information.[3] (Id.)

Defense counsel did not argue the merits of Defendant's Motion to Dismiss Indictment at the March 9, 2015, motions hearing, nor did Defense counsel supplement the original motion to dismiss the indictment in his post-hearing briefing. The Court might conclude, therefore, that Defendant has abandoned the present motion. However, in the interests of complete judicial review and out of an abundance of caution, the Court reviews the merits of Defendant's motion to dismiss the indictment.

The Indictment states that on or about September 4, 2014, in the State of Minnesota, Defendant "did knowingly possess, in and affecting interstate commerce, a Phoenix Arms .25 cal. Pistol, Model Raven, serial number 3044669, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e)(1)." (Indictment [Docket No. 10], at 1-2). The Indictment states that previously, Defendant had been convicted of the following four crimes, "each of which was punishable by imprisonment for a term exceeding one year, and at least three of which were violent felonies or serious drug offenses committed on occasions different from one another":

1.  Assault with Intent to do Great Bodily Harm Less Than Murder, 6/17/1997

---

[3] Additionally, Defendant replicates arguments advanced in support of Defendant's motions to suppress; the Court will address all evidentiary suppression issues and arguments in later sections of the present Report and Recommendation.

2.  Home Invasion – Third Degree, 12/2/2005
3.  Delivery/Manufacturing Marijuana (Attempt), 1/9/2008
4.  Delivery/Manufacturing Marijuana (Attempt), 7/14/2010

(Id. at 1). The Indictment also contains forfeiture allegations. (Id. at 2).

> In reviewing the sufficiency of an Indictment, or of any of its Counts, we are to determine whether the Indictment sufficiently sets forth the elements of the offenses alleged, whether it places the Defendant on fair notice of the charges against him, and whether it enables the Defendant to assert an acquittal or conviction so as to invoke his privilege against double jeopardy for a single offense.

United States v. Finn, 919 F. Supp. 1305, 1343 (D. Minn. 1995), report and recommendation adopted, 911 F. Supp. 372 (D. Minn. 1995), aff'd sub nom. United States v. Pemberton, 121 F.3d 1157 (8th Cir. 1997) and aff'd sub nom. United States v. Pemberton, 121 F.3d 1157 (8th Cir. 1997) (citing Hamling v. United States, 418 U.S. 87, 117, 94 S. Ct. 2887, 2907, 41 L.Ed.2d 590 (1974); United States v. Morris, 18 F.3d 562 (8th Cir. 1994); United States v. Staggs, 881 F.2d 1527, 1530 (10th Cir. 1989), cert. denied, 493 U.S. 1020, 110 S. Ct. 719, 107 L.Ed.2d 739 (1990)). "Typically an indictment is not sufficient only if an essential element of the offense is omitted from it." United States v. Adams, No. 02-cr-404 (JRT/RLE), 2004 WL 1118587, at *3 (D. Minn. May 14, 2004) (quoting United States v. Cuervo, 354 F.3d 969, 983 (8th Cir. 2004) (citation omitted)).

Defendant's conclusory argument set forth only in his original motion papers that the Indictment does not identify at least three violent felonies or serious drug offenses committed on different occasions prior to the events underlying the Indictment is simply incorrect. To the contrary, the Indictment sufficiently sets for the elements of the charged offense – namely, felon in possession of a firearm, armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and

924(e)(1)[4] – and places Defendant on notice of the charge. The Court finds Defendant's first argument in support of dismissal without merit.

With respect to Defendant's secondary argument that the Government presented the Grand Jury with misleading and/or incomplete evidence regarding "drug activity," "[a]n indictment returned by a legally constituted and unbiased grand jury . . . *if valid on its face*, is enough to call for trial of charge on the merits." Costello v. United States, 350 U.S. 359, 363 (1956) (emphasis added); see also United States v. Vincent, 901 F.2d 97, 99 (8th Cir. 1990) (quoting United States v. Calandra, 414 U.S. 338 (1974)) (finding that an indictment returned by a legally constituted and unbiased grand jury "is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence"). "[G]rand jury proceedings are afforded a strong presumption of regularity, and a defendant seeking to overcome that presumption faces a heavy burden." United States v. Kouba, 822 F.2d 768, 774 (8th Cir. 1987) (quoting United States v. Hintzman, 806 F.2d 840, 843 (8th Cir. 1986)). Dismissal of an indictment premised on Grand Jury abuse is appropriate only upon a showing of actual prejudice to the accused. Kouba, 822 F.2d at 774 (citing United States v. Carr, 764 F.2d 496 (8th Cir. 1985), cert. denied, 475 U.S. 1010, 106 S. Ct. 1184, 89 L.Ed.2d 301 (1986)).

---

[4] 18 U.S.C. § 922(g)(1) provides:

> It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 924(e)(1) provides:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

Defendant does *not* offer any argument, much less any actual *evidence*, that he sustained or stands to incur any actual prejudice as a result of any alleged "Grand Jury abuse." Defendant does not explain what effect, if any, the allegedly misleading and/or incomplete testimony as to "drug activity" has on the present unlawful firearm possession charge in this case. To the contrary, Defendant's arguments concerning the nature of the "drug activity" testimony and Defendant's connection (or lack thereof) to heroin are possibly irrelevant in light of the fact that the Indictment does *not* charge Defendant with any drug offenses. Defendant fails to carry his heavy burden to dismiss the indictment, and his argument concerning misleading and/or incomplete Grand Jury testimony necessarily fails.

The Court recommends **DENYING** Defendant's Motion to Dismiss Indictment, [Docket No. 23].

## III.   DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF SEARCH AND SEIZURE, [DOCKET NO. 16]

Defendant moves the Court for an order suppressing any and all physical evidence obtained as a result of the September 4, 2014, search and seizure (described below) because the affidavit submitted in support of the application for the September 4, 2014, state court search warrant did not articulate probable cause. (Def.'s Mot. to Suppress Evidence [Docket No. 16]). Specifically, Defendant argues that (1) the information law enforcement received from the "unknown concerned citizen who wanted to remain anonymous" had not been demonstrated to be reliable; (2) the information law enforcement received from the "unknown concerned citizen who wanted to remain anonymous" was stale; (3) law enforcement did not observe Defendant directly engage in criminal activity; and (4) the affidavit does not establish a sufficient nexus between the contraband to be located and the premises to be searched. Defendant also argues that the Leon good faith exception does not apply. (Def.'s Mem. [Docket No. 37]).

A.      Standard of Review

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit for a search warrant need only show facts sufficient to support a finding of probable cause." United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987). Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances set forth in the affidavit" demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Gates, 462 U.S. at 231). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995) (quoting, in turn, Gates, 462 U.S. at 238)).

As alluded to above, courts examine the sufficiency of a search warrant affidavit using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (quoting Solomon, 432 F.3d at 827; edits in Wiley). "In ruling on a

motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). Nevertheless, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

**B.    Analysis**

On September 4, 2014, White Earth Police Department Narcotics Investigator Tami Hunt, assigned to the Paul Bunyan Drug Task Force and the Federal Headwater Safe Trails Task Force ("Investigator Hunt"), drafted an affidavit in support of an application for a state court warrant to search a hotel room at the Shooting Star Casino, 777 Casino Road, Mahnomen, Minnesota; and a red Honda van with an identified Michigan license plate. (Gov't Ex. 1, at 2). Law enforcement believed that the subject search would reveal controlled substances, specifically, but not limited to, heroin; items associated with the distribution of controlled substances and other controlled substance paraphernalia; written materials and electronic data documenting the sale and/or possession of controlled substances; safety deposit keys, records, or other documents demonstrating use of storage facilities; bank records, ledger sheets, receipts, and other items demonstrating profit from the sale of controlled substances; firearms; and money, precious metals, and precious stones found in proximity to controlled substances. (Id. at 1).

In her supporting affidavit, Investigator Hunt stated that she is a licensed peace officer in the State of Minnesota and detailed her relevant background, experience, and training. (Id. at 2). Investigator Hunt stated that in August 2014, two Paul Bunyan Task Force agents each received a phone call from an "unknown concerned citizen who wanted to remain anonymous." (Id.) The caller reported that Aleemu Adkins of Detroit, Michigan "was coming to the Shooting Star Casino and selling heroin." (Id.) The caller reported that Adkins would bring 100 grams of heroin to sell and that Adkins associated with a Paula Reyes. (Id.) The caller reported that he/she knows Reyes very well and has observed Adkins in possession of heroin and large amounts of money. (Id.) The caller stated that Adkins typically possesses large amounts of heroin and that Adkins "sources" Reyes. (Id.) The caller stated that Reyes rented hotel rooms in her name for Adkins. (Id.) Investigator Hunt also stated that she has been involved in separate, unrelated informant interviews during which informants have stated that Reyes sells heroin and that the informants are able to buy from her. (Id.)

That same month, August 2014, Investigator Hunt observed Adkins coming and going from a hotel room at the Shooting Star Casino; Investigator Hunt observed Adkins from the casino's video surveillance room. (Id. at 3). Paula Reyes had rented the room. (Id.) Surveillance personnel stated that it appeared that Adkins was staying in the room with his wife and children. (Id.) Investigator Hunt later observed Adkins and his wife get into a red van with Michigan license plates. (Id.)

On September 4, 2014, White Earth Police Officer Jamie Allen ("Officer Allen") informed Investigator Hunt that the red van with identified Michigan license plates was again parked in the hotel parking lot at the Shooting Star Casino. (Id.) Investigator Hunt proceeded to the casino "to do more surveillance." (Id.) Investigator Hunt learned that Adkins had arrived the

night before and was staying in a room at the casino. (Id.) A Matthew Harding had rented the room; Investigator Hunt knew that Harding is Paula Reyes's son. (Id.) At approximately 6:48 p.m., Investigator Hunt observed a male knock on the door to Adkins's room. (Id.) Investigator Hunt stated that she observed the male enter the room for less than two minutes and reemerge. (Id.) Investigator Hunt observed the male move an unidentified object from his left hand to his right hand and place his hand in his pants pocket. (Id.) Investigator Hunt observed the male move through the casino via surveillance feeds and observed the male get into a vehicle with identifiable Minnesota license plates and drive away. (Id.) Investigator Hunt observed that someone was in the passenger seat of the vehicle. (Id.) Investigator Hunt relayed the vehicle's information to Officer Allen. (Id.)

A short time later, Investigator Hunt learned that Officer Allen had performed a traffic stop on the subject vehicle and had identified the driver as Matthew Harding and the passenger as Paula Reyes. (Id.) Investigator Hunt learned that officers located heroin in Reyes's purse. (Id.) Special Agent Paul Osowski had weighed and field tested the suspected heroin and confirmed the identity of the substance. (Id.)

Subsequently, law enforcement proceeded to Adkin's room and frozen the scene, in anticipation of obtaining the present search warrant. (Id.)

Upon receipt and execution of the state court search warrant at issue, law enforcement did not seize any physical evidence from the Shooting Star Casino hotel room, but law enforcement did locate and seize a firearm and ammunition in the red van with the Michigan license plates. (Gov't Ex. 2, at 5-6; Tr. [Docket No. 35], at 15).

Although Investigator Hunt's affidavit arguably articulates a *stronger* nexus between the contraband to be sought and Defendant's *hotel room*, as compared to Defendant's *vehicle*, the

Court need not determine whether Investigator Hunt's affidavit establishes a sufficient nexus between the contraband to be recovered and Defendant's vehicle.[5] Upon review of Investigator Hunt's supporting affidavit, the Court finds that the issuing judge had a substantial basis upon which to conclude that probable cause existed for the issuance of the September 4, 2014, search warrant *for Defendant's hotel room*, and that, as a direct result, under <u>Leon</u>, law enforcement *reasonably* relied on the warrant – which explicitly also extended to Defendant's vehicle (the red van) – when performing the search of Defendant's vehicle.

> **1.     The issuing judge had a substantial basis upon which to conclude that probable cause existed for the issuance of the September 4, 2014, search warrant for Defendant's hotel room.**

To establish probable cause for the issuance of a search warrant, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." <u>United States v. Tellez</u>, 217 F.3d 547, 550 (8th Cir. 2000) (<u>citing</u> <u>United States v. Koelling</u>, 992 F.2d 817, 823 (8th Cir. 1993)). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." <u>United States v. Etheridge</u>, 165 F.3d 655, 657 (8th Cir. 1999) (<u>citing</u> <u>United States v. Christenson</u>, 549 F.2d 53, 57 (8th Cir. 1977)).

As articulated above, whether probable cause exists to support the issuance of a search warrant depends on the totality of the circumstances: "[i]n determining whether probable cause exists, we do not evaluate each piece of information independently; rather, we consider all of the facts for their cumulative meaning." <u>United States v. Tyler</u>, 238 F.3d 1036, 1038 (8th Cir. 2001). First, Investigator Hunt's supporting affidavit articulates information obtained from an unidentified concerned citizen who wished to remain anonymous. "An informant's tip can be

---

[5] In fact, for the sake of argument here, it can be presumed that the affidavit submitted in support of the state court warrant does not establish a nexus such that there was, upon review by this Court, independent probable cause to search the red van.

sufficient to establish probable cause if the informant 'has a track record of supplying reliable information' *or* if the tip 'is corroborated by independent evidence.'" United States v. Gabrio, 295 F.3d 880, 883 (8th Cir. 2002) (quoting United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993)) (emphasis added). "Even the corroboration of minor, innocent details, can be enough to support a finding of probable cause." Tyler, 238 F.3d at 1039.

In the present case, the anonymous concerned citizen informed law enforcement that Defendant, an individual from Michigan, had been selling heroin at the Shooting Star Casino; that Defendant associated with and "sourced" a Paula Reyes; and that Reyes often rented hotel rooms in her own name for Defendant's use. Investigator Hunt independently corroborated the fact that Defendant was from Michigan (she observed Defendant driving a vehicle with Michigan license plates); that Defendant stayed at the Shooting Star Casino's hotel; and that Paula Reyes rented a hotel room for Defendant in her name. The information provided by the anonymous concerned citizen was sufficiently corroborated by Investigator Hunt's personal investigation and observations to contribute to the supporting affidavit's statement of probable cause.[6] "While the credibility and reliability of a person providing information to the police are important considerations in determining whether probable cause exists, they are not separate and independent requirements to be rigidly exacted in every case. Rather, we must weigh an informant's statements in the context of all of the circumstances." Id. at 1039 (internal citations and quotations omitted).

Investigator Hunt's affidavit states that law enforcement also determined that Defendant was staying at the Shooting Star Casino's hotel on September 4, 2014; that Matthew Harding – whom law enforcement knew to be Paula Reyes's son – had rented Defendant's room; that

---

[6] Additionally, Investigator Hunt had independently corroborated the anonymous concerned citizen's information mere weeks before executing the September 4, 2014, search.

Harding had visited Defendant's hotel room for less than two minutes before emerging with an unidentified item in his hand; that law enforcement had tracked Harding as he moved directly from Defendant's hotel room, through the casino, to a vehicle; and that, upon stopping Harding's vehicle, that law enforcement had discovered Paula Reyes in the vehicle with Harding and that she possessed a quantity of heroin. Considering the totality of the circumstances, the affidavit articulates probable cause to believe that (1) Defendant had a history of selling heroin at the Shooting Star Casino, (2) Defendant's illegal activity was often associated with Paula Reyes, and (3) Harding had likely procured heroin from Defendant moments before law enforcement discovered heroin in Paula Reyes's purse.

The Court compares, for example, the facts in Tellez, in which the Eighth Circuit held that the discovery of drugs on the defendant, a known drug dealer, *shortly after leaving his home* in response to an order placed by a customer was sufficient to establish probable cause for a search of defendant's home. Tellez, 217 F.3d at 549 ("In this case there was evidence that Mr. Tellez was engaged in a continuing course of criminal activity, and we believe that it could fairly be inferred that he was keeping a supply of drugs and perhaps other evidence related to his drug dealing in his home."). The same may be said of the facts now at hand.

Law enforcement had reason to believe that Defendant had been engaging in a continuing course of criminal activity involving Paula Reyes while staying at the Shooting Star Casino's hotel, and, after discovering controlled substances in the possession of individuals whom law enforcement knew to and had specifically observed associate with Defendant, one of whom had paid for Defendant's hotel room and had recently visited Defendant's hotel room, the Court finds that it would be reasonable for the state court judge who issued the warrant to infer that Defendant was keeping a supply of controlled substances in his hotel room. Significantly,

12

> For probable cause to exist, a magistrate need not determine that the evidence sought is *in fact* on the premises to be searched, or that the evidence is more likely than not to be found where the search takes place. *The magistrate need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit.*

United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir. 1985) (internal citations omitted) (emphasis in original; emphasis added) (overruled in part on other grounds).

The Court now finds that the affidavit in support of the September 4, 2014, search warrant application does establish a sufficient nexus between Defendant's hotel room and the possible existence of controlled substance contraband such that the issuing state court judge had a substantial basis to conclude that probable cause supported issuance of the warrant to search Defendant's hotel room.

> **2.     Even assuming the affidavit in support of the September 4, 2014, search warrant did not establish a sufficient nexus between contraband and Defendant's *vehicle*, the fact that the warrant did establish probable cause to search Defendant's hotel room supports the conclusion that law enforcement reasonably relied on the warrant as issued.**

"Under the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing United States v. Leon, 468 U.S. 897, 922 (1984)). "The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization. When assessing the objective reasonableness of police officers executing a warrant, we must look to the totality of the circumstances[.]" United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008) (quotations and internal citations omitted). Under Leon, "absent allegations that the magistrate was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in

preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" Etheridge, 165 F.3d at 658 (citing United States v. Fulghum, 143 F.3d 399, 401-02 (8th Cir. 1998), quoting Leon, 468 U.S. at 926, 104 S. Ct. 3405). See also United States v. Johnson, 219 F.3d 790, 791 (8th Cir. 2000) ("Even if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed."); United States v. Rugh, 968 F.2d 750, 753 (8th Cir. 1992) ("When police objectively and reasonably believe that probable cause exists to conduct a search based on an issuing judge's determination of probable cause, evidence seized pursuant to the ultimately invalid search warrant need not be suppressed.").

As already discussed above, Investigator Hunt's affidavit articulates probable cause for the warrant with respect to Defendant's hotel room and establishes a sufficient nexus between *one* of the locations listed in the warrant to be searched and the probability of locating contraband/evidence of a crime therein. Accordingly, when Investigator Hunt successfully obtained the warrant from the issuing state court judge, other members of law enforcement thereafter relied in good faith on the probable cause finding of the issuing judge.[7] Investigator Hunt's *detailed* supporting affidavit presented the issuing judge with specific facts concerning Defendant's likely involvement in illegal activity and a connection to the hotel room in question. It was not unreasonable for law enforcement to believe that the search warrant, insofar as it *also* provided for the search of Defendant's vehicle located at the hotel, was likewise supported by probable cause. Despite Defendant's conclusory arguments now before the Court to the contrary, Investigator Hunt's affidavit contains sufficient detail and can hardly be classified as a "bare

---

[7] Other law enforcement officers, in addition to Investigator Hunt, were involved in executing the search of Defendant's vehicle and the discovery of the firearm and ammunition at issue.

bones" affidavit. See Leon, 468 U.S. at 926 ("[Law enforcement's] application for a warrant clearly was supported by much more than a "bare bones" affidavit. The affidavit related the results of an extensive investigation and . . . provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause."); c.f., Grant, 490 F.3d at 634 (""[B]are bones' affidavits are insufficient. For instance, an affidavit stating that 'affiants have received reliable information from a credible person and believe that heroin is stored in a home' is insufficient to establish probable cause after Gates."); Gates, 462 U.S. at 239 ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.").

Because Investigator Hunt's September 4, 2014, affidavit articulates probable cause in support of the warrant with respect to Defendant's hotel room and establishes a sufficient nexus between *one* of the locations listed in the state court warrant to be searched and the contraband suspected to be located therein, the Leon good faith exception extends to law enforcement's reasonable reliance on the warrant to search the *second* location listed therein: Defendant's vehicle. Additionally, on the present record now before the Court, the Court finds no independent support for any of the exceptions to the Leon good faith rule to exist.[8]

The Court therefore recommends **DENYING** Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 16].

## IV.    DEFENDANT'S MOTION TO SUPPRESS STATEMENTS, [DOCKET NO. 22]

Finally, Defendant moves the Court for an order suppressing all statements, admissions, and answers by Defendant uttered prior to, at the time of, or subsequent to his arrest. (Def.'s

---

[8] See Leon, 468 U.S. at 923 (exceptions to the good faith rule when issuing judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth," "where the issuing magistrate wholly abandoned his judicial role," or when the warrant is "so facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonable presume it to be valid").

Mot. to Suppress Statements [Docket No. 22]). Defendant argues that his September 4, 2014, statement should be suppressed (1) as fruit of the poisonous tree (derived from an illegal search warrant), and/or (2) as involuntarily rendered.

The September 4, 2014, statement at issue is unequivocally the product of a custodial interrogation; law enforcement arrested Defendant, secured him in the back of a squad car, and began asking him questions reasonably calculated to illicit incriminating responses. Accordingly, the Court need not consider whether Defendant was in custody or subject to police interrogation at the time he made the subject statement.

### A.    Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Miranda warnings are mandatory for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way." Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444). However, law enforcement officers "are not required to administer Miranda warnings to everyone whom they question." Oregon v. Mathiason, 429 U.S. 492, 495 (1977). "Miranda warnings are required only where there has been such a restriction on a person's freedom as to render him in custody." Id. (internal quotation omitted).

A defendant's waiver of his Miranda rights must be made voluntarily, knowingly, and intelligently. Miranda, 384 U.S. at 444. When determining whether a defendant waived voluntarily, knowingly, and intelligently, the Court must consider the following:

> First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second, the suspect must have waived his rights "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011) (internal citations omitted) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)).

"The government has the burden of proving the validity of the Miranda waiver by a preponderance of the evidence." United States v. Haggard, 368 F.3d 1020, 1024 (8th Cir. 2004). The court "must examine both 'the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess.'" United States v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002) (quoting United States v. McClinton, 982 F.2d 278, 282 (8th Cir. 1992)). The United States Supreme Court has explained "that coercive police activity is a necessary predicate to . . . finding that a confession is not 'voluntary,'" Colorado v. Connelly, 479 U.S. 157, 167 (1986), and the Eighth Circuit has read that holding to mean "that police coercion is a necessary prerequisite to a determination that a waiver was involuntary and not as bearing on the separate question whether the waiver was knowing and intelligent." United States v. Turner, 157 F.3d 552, 555 (8th Cir. 1998) (emphasis in original) (quoting United States v. Bradshaw, 935 F.2d 295, 299 (D.C. Cir. 1991)).

When determining whether waiver was voluntary, knowing, and intelligently made, the Court "looks at the totality of the circumstances and must determine whether the individual's will was overborne." Syslo, 303 F.3d at 866.

Third, "[w]hether or not Miranda is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination." United States v. Pankey, No. 07-cr-2141

(DWF/RLE), 2007 WL 3513417, at *4 (D. Minn. Nov. 13, 2007) (citing Dickerson v. United States, 530 U.S. 428, 433-34 (2000)). When analyzing voluntariness, the Court considers "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession." Dickerson, 530 U.S. at 434. Furthermore, a statement is involuntary if it "was extracted by threats, violence, or . . . promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." United States v. Gallardo-Marquez, 253 F.3d 1121, 1123 (8th Cir. 2001) (quotations and citations omitted; ellipses in original). Whether a defendant's will has been overborne is determined by looking at the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure. United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998).

**B.    Analysis**

The Court must determine (1) whether Defendant voluntarily, knowingly, and intelligently waived his Miranda rights prior to giving his September 4, 2014, statement, and (2) whether Defendant's statements, a product of custodial interrogation, were voluntarily rendered.

First, the present record before the Court unequivocally demonstrates that law enforcement informed Defendant of his Miranda rights and that Defendant understood his rights as read. At the March 9, 2015, evidentiary hearing, Mahnomen County Sheriff's Office Chief Deputy Paul Osowski ("Chief Deputy Osowski") testified that he interviewed Defendant on the evening of September 4, 2014, after Defendant had been placed under arrested and placed in the back of another officer's squad car. (Tr. [Docket No. 35], at 14-16). Prior to the interview, Chief Deputy Osowski informed Defendant that he had been placed under arrest and advised him of his Miranda rights. (Id. at 16; Defense Ex. 2). Chief Deputy Osowski asked Defendant if he

understood his rights, to which Defendant replied, "Yes." (Defense Ex. 2). Chief Deputy Osowski asked Defendant if he would be interested in talking, and Defendant asked what law enforcement was interested in talking about. (Id.) Chief Deputy Osowski responded that he would like to talk about "everything that's happened tonight" and the gun that law enforcement had seized from Defendant's vehicle. (Id.) Following this exchange, Defendant began openly, voluntarily, and clearly answering law enforcement's questions and offering information concerning the events of that evening and Defendant's criminal history. (Id.) Defense Exhibit 2, an audio visual recording of the September 4, 2014, statement, confirms the same.

Nothing in the present record before the Court indicates that Defendant displayed any signs of confusion or the inability to understand his rights. To the contrary, testimony and a video recording (with audio track) of the statement indicate that Defendant voluntarily, knowingly, and intelligently agreed to speak with law enforcement. Defendant talked openly and clearly for the duration of the interview. Defendant provided responsive answers to all questions and then some. Defendant never declined to answer questions or otherwise indicated that he no longer wished to talk. In fact, it was Chief Deputy Osowski, not Defendant, who concluded the conversation.

Additionally, nothing in the present record indicates the involvement of police coercion, a "necessary predicate" to finding that a waiver or statement is not voluntarily given. Connelly, 479 U.S. at 167.

Upon review of the present record before the Court, the totality of the circumstances indicates that Defendant, well-advised of his Miranda rights, did knowingly, voluntarily, and intelligently waive those rights.

Second, nothing in the present record before the Court indicates that Defendant's statements were anything but voluntary. As already noted, nothing in the record indicates the involvement of any "coercive police activity" by the interviewing officers. The record indicates that law enforcement did not make any threats, promises, or employ other deprivations or coercive techniques throughout the duration of Defendant's interview.

Finally, the record is devoid of any evidence that Defendant was intoxicated, overly stressed, or otherwise mentally or physically impaired during the custodial interview. At the March 9, 2015, evidentiary hearing, Chief Deputy Osowski testified that Defendant "seemed fine" and "normal" and did not appear to be out-of-sorts or under the influence of any drugs or alcohol. (Tr. [Docket No. 35], at 17, 19). Chief Deputy Osowski did not have any difficulty communication with Defendant; Defendant was responsive and gave every indication that he understood the circumstances. (Id. at 20). Chief Deputy Osowski did not make any threats or promises. (Id. at 19). Investigator Hunt's March 9, 2015, testimony confirmed the same: Defendant appeared to be fine, lucid, engaged, and responsive, and Chief Deputy Osowski did not make any threats or promises, or employ other intimidating or coercive techniques. (Id. at 44-45).

The totality of the circumstances now before the Court indicates that (1) Defendant did knowingly, voluntarily, and intelligently waive his Miranda rights, and (2) Defendant made his September 4, 2014, custodial statement entirely voluntarily.

Thus, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, [Docket No. 22].

V.     **CONCLUSION**

For the foregoing reasons, and based on all the files, records, and proceedings herein, **IT**

**IS HEREBY RECOMMENDED:**

1. That Defendant's Motion to Dismiss Indictment, [Docket No. 23], be **DENIED**;

2. That Defendant's Motion to Suppress Evidence Obtained as a Result of Search and

   Seizure, [Docket No. 16], be **DENIED**; and

3. That Defendant's Motion to Suppress Statements, [Docket No. 22], be **DENIED**.


Dated: April 17, 2015                                      **s/ Leo I. Brisbois**
                                                           Leo I. Brisbois
                                                           U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties **by May 1, 2015**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by May 15, 2015**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.